IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 1, 2018

## ALBERT BELL ET AL. v.
## RICHARD CADMUS D/B/A BAND-TYPE SUPPLY

**Appeal from the Circuit Court for Loudon County**
**No. 2016-CV-108     Michael S. Pemberton, Judge**

_____

## No. E2017-02149-COA-R3-CV

_____

In this unlawful detainer action, the defendant appeals the dismissal of his appeal by the Loudon County Circuit Court ("circuit court") from an order to disburse funds entered by the Loudon County General Sessions Court ("general sessions court"). Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Richard Cadmus d/b/a Band-Type Supply, Lenoir City, Tennessee, Pro Se.

Loren E. Plemmons, Loudon, Tennessee, for the appellees, Albert Bell and Vina Carol George.

## OPINION

### I. Factual and Procedural Background

The plaintiffs, Albert Bell and Vina Carol George (collectively, "Plaintiffs"), filed an unlawful detainer action in the general sessions court against the defendant, Richard Cadmus d/b/a Band-Type Supply ("Mr. Cadmus"), on June 14, 2016. Plaintiffs alleged that based on the terms of a month-to-month commercial lease agreement that Mr. Bell had entered into with Mr. Cadmus, Plaintiffs were terminating the lease due to unpaid rent in the amount of $2,000.00 and "multiple factors." Ms. George subsequently

identified herself in an affidavit as "manager of accounts" for Mr. Bell.[1] The commercial property at issue was a warehouse located on South Grand Street in Lenoir City, Tennessee ("the Property"). It is undisputed that the amount of monthly rent to which Mr. Bell and Mr. Cadmus originally agreed was $1,000.00.[2]

In the unlawful detainer action, Plaintiffs sought possession of the Property, all unpaid rent due at the time of trial, restitution for any damages to the Property, attorney's fees, and court costs. In response, Mr. Cadmus, acting through his then-counsel, A. Wayne Henry, filed a counter-complaint, alleging claims of breach of contract and detrimental reliance. Mr. Cadmus explained in subsequent pleadings that he was in the wholesale used piano business, necessitating safe storage space for many pianos as well as a means of "showcasing" pianos to the public.

Following a bench trial, the general sessions court, with Judge Rex Alan Dale presiding, entered a judgment on August 11, 2016, awarding to Plaintiffs the amount of $7,690.41 plus interest and court costs, as well as possession of the Property. The general sessions court concomitantly entered a judgment dismissing Mr. Cadmus's counter-complaint in its entirety.

Also on August 11, 2016, Mr. Cadmus, now acting through attorney Darren V. Berg, filed a motion to remove the case to circuit court, asserting that the damages requested in accordance with his counterclaim were "well in excess" of the $25,000.00 "jurisdictional limit" of general sessions court and noting that Mr. Cadmus's former counsel had filed a counterclaim but failed to plead the amount of damages sought.[3] In the motion to remove the case, Mr. Cadmus specified that he was seeking $8,000.00 in damages incurred when he had moved inventory in reliance on a purported oral agreement with Mr. Bell to rent a different portion of the Property; an unspecified

---

[1] The trial court's orders and the parties' pleadings often refer to Mr. Bell as a singular plaintiff. However, Ms. George has never been dismissed as a party. For ease of reference, we will continue to refer in this Opinion to Mr. Bell and Ms. George jointly as "Plaintiffs."

[2] On appeal, Mr. Cadmus states in his principal brief that the initial one-year lease agreement was oral and was subsequently changed by Plaintiffs to a written month-to-month agreement. Plaintiffs have not disputed this description of the parties' agreement. We note that no written lease appears in the record on appeal.

[3] We note that although Tennessee Code Annotated § 16-15-501(d)(1) (2009) provides that "[t]he jurisdiction of courts of general sessions, where they have been created, shall extend to the sum of twenty-five thousand dollars ($25,000) in all civil cases, both law and equity," the subsection further provides, *inter alia*, that this limit does not apply to cases of forcible entry and detainer, "in which the [general sessions] court shall have unlimited original jurisdiction[.]" However, "[t]he circuit court also has original jurisdiction over unlawful detainer actions." *Johnson v. Hopkins*, 432 S.W.3d 840, 844 n.4 (Tenn. 2013) (citing Tenn. Code Ann. § 29-18-108).

amount of damages incurred when Plaintiffs had shut off water to the Property; punitive damages; and loss of profits in an unspecified amount.

On August 18, 2016, Mr. Cadmus, now acting without benefit of counsel, filed a notice of appeal to circuit court pursuant to Tennessee Code Annotated § 27-5-108. In his notice of appeal, Mr. Cadmus also demanded a jury trial. He posted an appeal bond with the general sessions court clerk's office in the amount of $12,000.00, equating to twelve months of rent concerning the Property.

On August 19, 2016, Mr. Cadmus filed with the circuit court a "Petition for Writ of Certiorari and Supersedeas," to "appeal and stay" the general sessions court judgment. Mr. Cadmus then filed an "Emergency Motion for Stay," on August 22, 2016, requesting an emergency stay of the general sessions court judgment granting possession of the Property to Plaintiffs "in order to stop the [Sheriff] from removing inventory and equipment . . . ." The circuit court granted Mr. Cadmus's emergency motion in an order entered August 29, 2016, staying the general sessions court judgment "pending further orders" of the circuit court.

On September 2, 2016, Plaintiffs filed a motion to quash the order granting Mr. Cadmus's motion to stay, as well as a motion to dismiss Mr. Cadmus's petition for writ of certiorari and supersedeas. Plaintiffs asserted, *inter alia*, that the circuit court did not have subject matter jurisdiction to hear Mr. Cadmus's petition for writ of certiorari and supersedeas because the petition was "constitutionally and statutorily defective." As Plaintiffs noted, Mr. Cadmus's petition had not been sworn to and did not include an affirmation that it was his first such application. *See* Tenn. Code Ann. § 27-8-106 (2017) ("The petition for certiorari may be sworn to before the clerk of the circuit court, the judge, any judge of the court of general sessions, or a notary public, and shall state that it is the first application for the writ."). Mr. Cadmus then filed an amended petition on September 8, 2016, adding, *inter alia*, a statement that he "declare[d] under penalty of perjury that the foregoing is true and correct." This petition, as with the original, was not sworn to before a clerk of the court, judge, or notary public and did not contain an affirmation that it was the first application for the writ. Plaintiffs subsequently filed an amended motion to quash the order granting a stay of execution and to dismiss the petition for writ of certiorari and supersedeas, and Mr. Cadmus filed a response, which he subsequently amended.

The circuit court conducted a hearing on Plaintiffs' motion on September 14, 2016. Following this hearing but before the circuit court entered the resultant order, Mr. Cadmus filed two additional motions requesting permission to amend his petition for writ of certiorari and supersedeas. Neither of these pleadings was sworn to before a clerk of

the court, judge, or notary public, and neither included an affirmation that it was the first application for the writ.

On September 28, 2016, the circuit court entered an "Order to Quash Stay of Execution and Dismissal of Petition for Writ of Certiorari." In this order, the circuit court quashed the August 29, 2016 stay of execution and dismissed Mr. Cadmus's amended petition for writ of certiorari and supersedeas, determining that it lacked subject matter jurisdiction to hear the petition due to Mr. Cadmus's lack of compliance with Tennessee Code Annotated § 27-8-106. *See Hirt v. Metro. Bd. of Zoning Appeals of Metro. Gov't of Nashville*, 542 S.W.3d 524, 527 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Apr. 23, 2017) (explaining that subject matter jurisdiction over a petition for writ of certiorari is in part "predicated upon the verification requirement in section 27-8-106").

However, the circuit court denied Plaintiffs' motion to dismiss Mr. Cadmus's petition insofar as Mr. Cadmus was appealing pursuant to Tennessee Code Annotated § 29-18-128. The circuit court specifically found in pertinent part:

> There are two (2) ways to appeal an unlawful detainer action to the Circuit Court, one (1) procedure pursuant to *Tenn. Code Ann.* § 29-18-128 "Appeal and Review" and one (1) procedure pursuant to *Tenn. Code Ann.* § 29-18-129 "Circuit Court, Certiorari and Supersedeas; Bonds." A defendant may utilize § 29-18-128 "Appeal and Review" if he or she does not wish to remain in possession of the premises during appeal, but, should the defendant so wish, he or she must utilize § 29-18-129 "Circuit Court, Certiorari and Supersedeas; Bonds." Under the latter section, a defendant must post bond equivalent to one (1) year['s] rent.

> Here, the record indicates that [Mr. Cadmus] utilized both methods by filing his Notice of Appeal pursuant to *Tenn. Code Ann.* § 29-[18]-128 and a Petition for Writ of Certiorari and Supersedeas [pursuant to] *Tenn. Code Ann.* § 29-18-129. Further, [Mr. Cadmus] posted bond in the equivalent of one (1) year['s] rent.[4]

---

[4] Tennessee Code Annotated § 29-18-129 (2012) requires that a defendant/petitioner seeking a writ of certiorari and supersedeas in an action involving forcible entry and detainer must post a bond and security "of sufficient amount to cover, besides costs and damages, the value of the rent of the premises during the litigation." Tennessee Code Annotated § 29-18-130(b)(2) (2012) requires, in pertinent part, that a defendant appealing a judgment based on breach of contract for failure to pay rent "shall execute bond, or post either a cash deposit or irrevocable letter of credit from a regulated financial institution, or provide two (2) good personal sureties with good and sufficient security in the amount of one (1) year's rent of the premises . . . ." *See Johnson*, 432 S.W.3d at 845-57.

4

However, the Court finds that in appealing by Petition for Writ of Certiorari and Supersedeas, there are substantive requirements which are jurisdictional to permit the Court to adjudicate the controversy. In order for this court to acquire subject matter jurisdiction, a Petition for Writ of Certiorari and Supersedeas must be sworn to and contain the affirmation that the Petition was the first application for the writ of certiorari and supersedeas. [Mr. Cadmus's] Petition was not sworn to and did not contain the required affirmation.

The Court finds that in most circumstances, it can permit an amendment which is to be freely given and relate back to initial filing of a flawed pleading or motion.

The Court further finds that due to [Mr. Cadmus's] failure to follow substantive procedural requirements in filing the Petition for Writ of Certiorari and Supersedeas, the Court does not have subject matter jurisdiction over the matter and therefore no jurisdiction to entertain requests for amendment.

The Court concludes that [Plaintiffs'] Motion to Quash Order Granting Motion to Stay Execution and Dismiss Petition for Writ of Certiorari and Supersedeas is well taken and the Petition for Writ of Certiorari and Supersedeas is Dismissed for lack of subject matter jurisdiction.

However, as noted above, [Mr. Cadmus] herein sought review of this court via both statutes. While the dismissal of his *Tenn. Code Ann.* § 29-18-129 action precludes him remaining in possession of premises, it, in the court's opinion, does not preclude this court's review, or trial *de novo*, under *Tenn. Code Ann.* § 29-[18]-128.

(Internal footnote and paragraph numbering omitted.)

In response to this order, Plaintiffs filed an application for interlocutory appeal with this Court, pursuant to Tennessee Rule of Appellate Procedure 9, on October 7, 2016. This Court dismissed the application in an order entered October 20, 2016, determining that because the application was "not accompanied by any order from the Trial Court granting a motion for interlocutory review of the challenged order as required by Rule 9(d) of the Tennessee Rules of Appellate Procedure," there had been no trial court action "sufficient to confer jurisdiction in this Court pursuant to Rule 9."

On October 26, 2016, Plaintiffs filed in the circuit court a motion to alter or amend the September 28, 2016 judgment, requesting that the circuit court dismiss the case entirely and affirm the general sessions court judgment with an award of post-judgment interest and costs. Plaintiffs argued that by "seeking a stay of the impending writ of possession," Mr. Cadmus had "made the election of remedy to seek review of the lower court's judgment and remain in possession of the premises." Plaintiffs thereby asserted that Mr. Cadmus had essentially elected not to proceed with an appeal under Tennessee Code Annotated § 29-18-128 because he could not seek relief concurrently under § 29-18-128 (appeal and review) and § 29-18-129 (petition for writ of certiorari and supersedeas). Noting that the circuit court had already determined that it did not have subject matter jurisdiction to hear Mr. Cadmus's petition for writ of certiorari and supersedeas due to the defects in the petition, Plaintiffs further asserted that Mr. Cadmus's appeal to circuit court must be dismissed.

The circuit court conducted a hearing on Plaintiffs' motion to alter or amend on November 9, 2016. In an order entered January 19, 2017, the circuit court found Plaintiffs' motion to be "well taken" and dismissed the case while remanding to the general sessions court for a determination of how the $12,000.00 bond previously posted by Mr. Cadmus should be distributed. Between the time of the circuit court's oral ruling at the close of the November 2016 hearing and entry of the resulting order, Mr. Cadmus filed a motion to vacate the judgment announced during the hearing. In its January 2017 order, the circuit court expressly stated that it had considered and was denying Mr. Cadmus's motion to vacate.

On April 11, 2017, Plaintiffs filed in the general sessions court a "Motion to Recover on Bond and Execution," requesting that the general sessions court "determine the total amount of judgment, interest on the judgment, additional rent, and costs" to be paid to Plaintiffs from the appeal bond previously posted by Mr. Cadmus. In an affidavit attached to the motion, Ms. George stated that Mr. Cadmus was entitled to a $3,000.00 set-off against the judgment for rent payments received by Plaintiffs prior to the August 2016 trial, rendering a judgment balance of $4,690.41. Ms. George calculated six-percent post-judgment interest, pursuant to Tennessee Code Annotated § 27-8-118(a), on the $4,690.41 balance at $0.77 per day. She asserted that Mr. Cadmus also owed rent for occupation of the premises from August 12, 2016, the day after the judgment, through September 27, 2016, the last day he occupied the Property. Ms. George calculated this post-judgment rent at $1,533.64 for forty-six days, based on the rental rate of $1,000.00 monthly. Ms. George noted that the costs Plaintiffs had paid for the initial filing of the action had been $225.50. On April 18, 2017, Mr. Cadmus filed a response to the motion in the general sessions court concomitantly with a motion to vacate the August 2016

general sessions court judgment. Plaintiffs subsequently filed a motion to quash Mr. Cadmus's response.

Following a hearing, the general sessions court entered an "Order to Disburse Funds" ("Disbursal Order") on May 4, 2017, granting Plaintiffs' motion to recover and dismissing Mr. Cadmus's motion to vacate. The general sessions court awarded to Plaintiffs, specifically to "Plaintiff Bell," the judgment amount of $7,690.41, less a set-off of $3,000.00, for a total balance of the unpaid judgment in the amount of $4,690.41; post-judgment interest of six percent calculated upon the unpaid judgment balance and assessed from August 12, 2016, through the date of check issuance at an interest rate of $0.77 per day; $1,533.64 in rent due for Mr. Cadmus's post-judgment occupancy of the Property; and reimbursement of the initial filing fee. Court costs were also taxed against Mr. Cadmus's surety bond. The general sessions court directed that upon payment of the full judgment award from Mr. Cadmus's $12,000.00 bond, the court clerk was to return the balance of the surety bond funds to Mr. Cadmus.

Mr. Cadmus filed a notice of appeal in the general sessions court on May 16, 2017, stating that he was appealing the Disbursal Order and the dismissal of his counterclaim to the circuit court. He further demanded a jury trial. In the circuit court, Plaintiffs filed a motion to dismiss, arguing, *inter alia*, that the circuit court lacked subject matter jurisdiction to hear the appeal. Mr. Cadmus then filed a motion to nonsuit his counterclaims without prejudice.

Following a hearing conducted by the circuit court on June 12, 2017, the circuit court entered an order dismissing Mr. Cadmus's appeal on June 23, 2017. The order reflects that upon finding that Mr. Cadmus was seeking to appeal the general sessions court's Disbursal Order, the circuit court questioned Mr. Cadmus concerning the findings of the Disbursal Order, particularly the amounts due as a result of the August 2016 general sessions court judgment. Finding that Mr. Cadmus did not dispute what the amount of the original judgment had been, the mathematical calculations in the Disbursal Order, or the dates of his occupancy of the Property, the circuit court found that Mr. Cadmus had failed to state a claim in his appeal upon which relief could be granted. The circuit court thereby dismissed Mr. Cadmus's appeal and remanded to the general sessions court for enforcement of the Disbursal Order.

On July 19, 2017, Mr. Cadmus filed in the circuit court a "Motion to Set Aside, Vacate and Motion for New Trial," requesting, pursuant to Tennessee Rules of Civil Procedure 59.04 and 60.02, that the circuit court set aside or vacate the orders entered on September 28, 2016; January 19, 2017; and June 12, 2017, and grant him a new trial. Specifically as to the June 2017 order, Mr. Cadmus disputed the circuit court's findings that he had acknowledged the accuracy of the money amounts stated in the Disbursal

Order during the June 12, 2017 hearing. Upon a previous motion filed by Mr. Cadmus to correct a clerical error in the January 19, 2017 order, the circuit court entered an order on August 3, 2017, making that clerical correction.

Following a hearing conducted on September 27, 2017, the circuit court entered an "Order of Dismissal" on October 23, 2017, dismissing Mr. Cadmus's motion to set aside or vacate and motion for new trial and remanding to the general sessions court. Finding that Mr. Cadmus was "dissatisfied with the judgment of the General Sessions Court and desire[d] to re-litigate," the circuit court also found that it had previously ruled that it did "not have subject matter jurisdiction of this cause and all claims and/or causes of action [had] been previously dismissed." On November 1, 2017, Mr. Cadmus filed a notice of appeal with this Court.

## II. Issues Presented

Mr. Cadmus presents eleven issues on appeal, within which he states several facts not in evidence and asserts several points of argument concerning the original general sessions court judgment. For the sake of completeness, we list Mr. Cadmus's issues essentially verbatim below with only slight modifications for consistency in statutory citations and in identifying the parties:

1. Is an amount of unpaid rent a material fact in an unlawful detainer action ostensibly filed on the grounds of unpaid rent?

2. Was there an intentional misrepresentation regarding a material fact in this Detainer Action?

3. Did the General Sessions Court have subject matter jurisdiction when relying on false information and misrepresented facts stated by [Plaintiffs] in writing or in person, which resulted in monetary damages to [Mr. Cadmus]?

4. Ha[ve] [Plaintiffs] committed intrinsic fraud upon the court by averring that the "amount of rent now owing and unpaid is $2,000.00" when [Plaintiffs] later averred, in a sworn statement to the [general sessions court], that this was not the actual case, due to a $3,000.00 "set-off" owed to the tenant out of an incorrect [judgment] amount, which ONLY existed due to an earlier misrepresentation of material facts and fraud on the court by [Plaintiffs]?

8

5.    Does refusing to accept a USPS Registered Letter . . . that obviously contained a check for rent (which was clearly visible on the check memo line, through the envelope window) mean that a landlord has not committed extrinsic fraud, by claiming they have not been paid rent for the month in question, while filling out a Detainer Summons?

6.    When [Plaintiffs], through no fault of [Mr. Cadmus], fail[] to "negotiate" by depositing or cashing checks in hand, for whatever reason, does that remove any of [Plaintiffs'] responsibility for being in possession of a negotiable rent payment instrument?

7.    Does any wording contained on a check MEMO line prevent a monthly lease or rent payment check from being negotiated by a recipient landlord via deposit, at the landlord's Bank, which happens to also be [the] same Bank the check is written against?

8.    Does a [general sessions court], over [Mr. Cadmus's] objection, have subject matter jurisdiction to make an in-camera inspection of an affidavit and then modify [its] own [judgment], based on that affidavit along with [Plaintiffs'] subsequent and factually changed testimony, which was received more than 30 days after the original trial and verdict?

9.    Are [Tennessee Code Annotated §§] 29-18-111 [plaintiff's bond for wrongful prosecution] [and] 29-18-130(b)(1) [plaintiff's bond for unlawful detainer action on appeal] applicable to this case?

10.   Should [Plaintiffs' counsel] be sanctioned for orchestrating this lawsuit, which undoubtedly would cost any normal Plaintiff a small fortune and any normal Defendant . . . an even larger small fortune in legal fees?

11.   Can [Mr. Cadmus] . . . recoup some of his expenses and lost opportunity costs at the [appellate] level?

For their part, Plaintiffs present the following three issues, which we have restated slightly:

12.   Whether Mr. Cadmus failed to timely file a notice of appeal within thirty days from entry of the trial court's January 19, 2017 judgment.

13. Whether the trial court abused its discretion by denying Mr. Cadmus's motion for new trial filed on July 18, 2017.

14. Whether Mr. Cadmus has waived his arguments on appeal by failing to comply with Tennessee Court of Appeals Rule 6.

### III. Standard of Review

Concerning the right of appeal from a general sessions court judgment, Tennessee Code Annotated § 27-5-108 (2017) provides in pertinent part:

(a)(1) Any party may appeal from a decision of the general sessions court to the circuit court of the county within a period of ten (10) days on complying with the provisions of this chapter.

* * *

(c) Any appeal shall be heard de novo in the circuit court.

In addition, Tennessee Code Annotated § 27-5-107 (2017) provides:

If the papers are properly returned, and the appellant fails to appear or defend as above, or if the appeal is dismissed for any cause, the appellee is entitled to an affirmance of the judgment below, with costs.

Regarding our review of *de novo* appeals to circuit court from general sessions court, this Court has previously explained:

Tenn. Code Ann. § 16-15-729 (Supp. 2007) governs appeals from general sessions court to circuit court, and requires a *de novo* review by the circuit court. As our Supreme court held in *Ware v. Meharry Medical College,* 898 S.W.2d 181 (Tenn. 1995):

De novo appeals from the general sessions court differ from other types of appellate proceedings. The circuit court does not review the general sessions court's decision. Rather, it provides the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the circuit court.

10

*Id.* at 184 (citations omitted).

Consequently, this Court reviews the decision of the circuit court *de novo* upon the record with a presumption of correctness as to the trial court's findings of facts. We must affirm those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

*Best Signs, Inc. v. Bobby King, Design King, Inc.*, 358 S.W.3d 226, 229-30 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. Aug. 17, 2009) (additional internal citations omitted).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Compliance with Tennessee Court of Appeals Rule 6

As a threshold issue, Plaintiffs contend that Mr. Cadmus has waived his various issues on appeal by failing to substantially comply with Tennessee Court of Appeals Rule 6, which provides in pertinent part:

(a) Written argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that

11

part of the record where appellant's challenge of the alleged error is recorded.

    (3)    A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

    (4)    A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b)    No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

In particular, Plaintiffs assert that Mr. Cadmus has "submit[ted] various allegations of pre-trial and post[-]trial facts or events in substantiation of his arguments" but has not provided citations to the record to indicate where such facts may be found. Plaintiffs further assert that support for these facts is not to be found in the record because no evidence was presented during the circuit court hearings. In response to this issue, Mr. Cadmus in his reply brief refers this Court to the record transmitted to this Court on appeal.

Although we agree with Plaintiffs that Mr. Cadmus has asserted many facts in his principal and reply briefs that are not in the record before us and for which he has failed to provide citations to the record, we determine that review of the dispositive issues in this case is not dependent upon these facts. In several of the issues Mr. Cadmus has attempted to raise, he questions the general sessions court's original August 2016 judgment, which for reasons we will explain in the next section, is not properly before us on appeal and was not properly before the circuit court at the time this appeal was taken. Therefore, these factual issues concerning the original general sessions court judgment are pretermitted as moot.

However, in questioning overall the circuit court's dismissal of his appeal, Mr. Cadmus has attempted to comply with Tennessee Rule of Appellate Procedure 27 by dividing his principal brief into appropriate sections, summarizing the nature of the case as he understands it, and citing to what he considers to be relevant legal authority. Tennessee Rule of Appellate Procedure 27 states in pertinent part:

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

   (1) A table of contents, with references to the pages in the brief;

   (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

   * * *

   (4) A statement of the issues presented for review;

   (5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

   (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

   (7) An argument, which may be preceded by a summary of argument, setting forth:

      (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

      (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

   (8) A short conclusion, stating the precise relief sought.

While noting that "[f]or good cause, we may suspend the requirements or provisions of these rules in a given case," this Court has also explained that "[c]ourts

13

have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 54-55 (Tenn. Ct. App. 2000), *perm. app. denied* (Tenn. Feb. 26, 2001). Upon careful consideration and in light of Mr. Cadmus's *pro se* status, we determine, in our discretion, that Mr. Cadmus has not failed to comply with Tennessee Rule of Appellate Procedure 27 and Tennessee Court of Appeals Rule 6 so substantially as to waive what we determine to be his dispositive issues: (1) whether the circuit court erred by determining that Mr. Cadmus was not entitled to "re-litigate" the original unlawful detainer action on appeal upon finding that the January 2017 judgment dismissing his original appeal was final, (2) whether the general sessions court had subject matter jurisdiction to enter the Disbursal Order upon a hearing and consideration of Ms. George's affidavit, and (3) whether the circuit court erred by dismissing Mr. Cadmus's appeal of the Disbursal Order. We will analyze each of these issues in turn.

### V. Finality of the January 2017 Order

In his presentation of issues, Mr. Cadmus labels the May 2017 Disbursal Order a "modification" of the August 2016 judgment and makes clear his belief that if he were to prevail in this appeal, he would be entitled to a new trial on the original judgment. He also raises several issues questioning the general sessions court's ruling in the original judgment. We determine the fatal flaw in Mr. Cadmus's argument in this regard to be his lack of recognition that the appeal process related to the original August 2016 judgment ended when the circuit court entered a final judgment dismissing that appeal on January 19, 2017, and Mr. Cadmus failed to file a notice of appeal to this Court within thirty days pursuant to Tennessee Rule of Appellate Procedure 4. In this vein, Plaintiffs have raised the related issue of whether Mr. Cadmus has in this appeal improperly attempted to appeal the January 2017 circuit court judgment due to this Court's lack of subject matter jurisdiction over an untimely filed appeal.

Upon a thorough review of the record, we agree with Plaintiffs that the circuit court's January 2017 judgment dismissing Mr. Cadmus's original appeal was a final judgment from which Mr. Cadmus failed to timely appeal. We therefore determine that this Court has subject matter jurisdiction to review solely the circuit court's October 2017 final judgment from which Mr. Cadmus perfected a timely appeal. This was the order denying Mr. Cadmus's motions to set aside and for new trial and dismissing Mr. Cadmus's appeal of the Disbursal Order.

"Subject matter jurisdiction involves a court's lawful authority to adjudicate a particular controversy." *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). Ordinarily, a party may

appeal a final judgment by filing a notice of appeal within thirty days of the trial court's entry of judgment or order regarding certain post-trial motions. *See* Tenn. R. App. P. 4(a)-(b). If a notice of appeal is untimely, this Court lacks subject matter jurisdiction over the case and must dismiss the appeal. *See Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009).

In analyzing the finality of the January 2017 judgment, it is helpful to begin with a description of the statutory procedure provided in Tennessee for unlawful detainer actions. This Court has recently explained:

> Unlawful detainer is a statutory action created to "streamline the cumbersome and more formal common law action[s], such as ejectment, used to determine rightful possession of real property." *Newport Hous. Auth. v. Ballard*, 839 S.W.2d 86, 89 (Tenn. 1992); Tenn. Code Ann. § 29-18-104. At the commencement of an unlawful detainer action, the plaintiff must post a bond "to pay all costs and damages which shall accrue to the defendant for the wrongful prosecution of the suit." Tenn. Code Ann. § 29-18-111 (2012).

> In cases filed in general sessions court, the judge determines which party is entitled to possession and enters judgment accordingly. *Id.* § 29-18-119(b) (2012). In conjunction with the judgment of possession, the judge is also statutorily required to "ascertain the arrearage of rent, interest, and damages, if any, and render judgment therefor." *Id.* § 29-18-125 (2012); *see Nashville Hous. Auth. v. Kinnard*, 186 Tenn. 33, 207 S.W.2d 1019, 1020 (1948) ("[T]he judgment for rent and damages [is] incidental to the judgment for possession."). The judgment of possession is only stayed for ten days. Tenn. Code Ann. § 29-18-126 (2012). Thereafter, a prevailing plaintiff is entitled to possession immediately. *Id.* § 29-18-130(a) (2012).

> The unsuccessful defendant in an unlawful detainer action has two options for seeking de novo review in circuit court. *Johnson v. Hopkins*, 432 S.W.3d 840, 845 & n.5 (Tenn. 2013). A notice of appeal can be filed within ten days. Tenn. Code Ann. § 29-18-128 (2012). Or the losing party can, within thirty days, petition the circuit court for writs of certiorari and supersedeas. *Id.* § 29-18-129 (2012).

> If the defendant chooses to petition for writs of certiorari and supersedeas under Tennessee Code Annotated § 29-18-129, the circuit court must grant the petition and issue the requested writs if the applicant

submits a petition containing a meritorious defense and a bond with sufficient security to cover all costs, damages, and the value of the rent of the premises during the litigation. *Id.* § 29-18-129; *Elliott v. Lawless*, 53 Tenn. 123, 126 (1871). The writ of certiorari removes the case to the circuit court while the writ of supersedeas stays enforcement of the possession judgment. *Kinnard*, 207 S.W.2d at 1020.

The defendant who elects to appeal must file a notice of appeal accompanied by a cost bond or a poverty oath and a uniform civil affidavit of indigency. Tenn. Code Ann. §§ 20-12-127 (2009), 27-5-103 (2000), 27-5-108 (Supp. 2016), 29-18-128 (2012); Sup. Ct. R. 29. Filing a notice of appeal does not stay execution of the judgment of possession. *Bell v. Smith*, 185 Tenn. 11, 202 S.W.2d 654, 656 (1947) ("It has long been recognized as the law in this State that an appeal by defendant from an adverse judgment . . . does not forestall the writ of possession."). Once a defendant files a notice of appeal, the plaintiff cannot execute the writ of possession without first posting a bond for "double the value of one (1) year's rent of the premises," all costs and damages associated with the wrongful enforcement of the writ, and any judgment rendered on appeal. Tenn. Code Ann. § 29-18-130(b)(1). But a different procedure applies if the defendant is a tenant whose continued possession of leased premises is challenged due to nonpayment of rent. *Id.* § 29-18-130(b)(2).

In such instances, to retain possession, the appealing tenant must post a bond for one year's rent and the costs and damages "accruing from the failure of the appeal, including rent and interest on the judgment." *Id.* If the tenant fails to post the required bond, the landlord may obtain and execute a writ of possession without filing a possessory bond. *Id.*

*Gallatin Hous. Auth. v. Pelt*, 532 S.W.3d 760, 763-64 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Sept. 21, 2017) (footnotes omitted).

In the case at bar, the general sessions court determined that Plaintiffs were entitled to possession and entered a judgment accordingly in August 2016. *See id.* at 763 (citing Tenn. Code Ann. § 29-18-119(b)). In conjunction with the judgment of possession, the general sessions court also entered a money judgment against Mr. Cadmus for $7,690.41 plus statutory interest and cost of the suit. *See Gallatin Housing Auth.*, 532 S.W.3d at 763 (citing Tenn. Code Ann. § 29-18-125).

As noted by the circuit court, Mr. Cadmus then attempted to pursue both possible options for seeking *de novo* review in circuit court: a notice of appeal filed pursuant to

Tennessee Code Annotated § 29-18-128 and a petition for writ of certiorari and supersedeas filed pursuant to Tennessee Code Annotated § 29-18-129. *See Gallatin Housing Auth.*, 532 S.W.3d at 763 (citing *Johnson*, 432 at 845 n.5). Mr. Cadmus concomitantly filed a motion for an emergency stay of the writ of possession. In its September 28, 2016 order, the circuit court dismissed Mr. Cadmus's petition for writ of certiorari and supersedeas upon determining that the petition was defective such that the circuit court did not have subject matter jurisdiction to consider the petition. *See Hirt*, 542 S.W.3d at 527. However, the circuit court ruled at that time that Mr. Cadmus could continue with his appeal filed pursuant to Tennessee Code Annotated § 29-18-128.

Subsequently, in its January 2017 order and upon Plaintiffs' motion, the circuit court found that because Mr. Cadmus had filed a motion for a stay of the writ of possession and posted the corresponding bond, he had elected the remedy of a petition for writ of certiorari and supersedeas, pursuant to Tennessee Code Annotated § 29-18-129, to the exclusion of an appeal pursuant to Tennessee Code Annotated § 29-18-128. *See generally Gallatin Housing Auth.*, 532 S.W.3d at 763 (explaining the procedures under § 29-18-129 and § 29-18-128 as "two options for seeking de novo review"); *Rentals v. Appelt*, No. E2017-01565-COA-R3-CV, 2018 WL 3701826, at *4 (Tenn. Ct. App. Aug. 3, 2018) (noting the "two distinct methods of *de novo* review of an unlawful detainer action").[5]

Having previously determined that it did not have subject matter jurisdiction to hear Mr. Cadmus's petition for writ of certiorari and supersedeas, the circuit court dismissed Mr. Cadmus's appeal of the general sessions court's judgment in its entirety. The circuit court further found in its January 2017 order that, absent an agreement from the parties, it did not have subject matter jurisdiction to entertain an issue raised regarding whether the $12,000.00 bond posted by Mr. Cadmus should be applied to the general sessions court's judgment or returned in its entirety to Mr. Cadmus. In dismissing the case, the circuit court remanded it to the jurisdiction of the general sessions court "for such further action, if any, as appropriate."

We determine that the January 2017 judgment was final as to Mr. Cadmus's appeal to circuit court of the general sessions court's August 2016 judgment. Tennessee Code Annotated § 27-5-107 (2017) provides in pertinent part that if an appeal from general sessions court "is dismissed for any cause, the appellee is entitled to an affirmance of the judgment below, with costs." *See Crowley v. Thomas*, 343 S.W.3d 32, 34-35 (Tenn. 2011). As this Court has explained:

---

[5] Inasmuch as we have determined that we do not have subject matter jurisdiction to review the January 2017 order, we make no determination here regarding whether the circuit court properly found the two methods of *de novo* review to be mutually exclusive under the circumstances of this case.

17

[T]his passing of jurisdiction from one court to another is muddied not only by the fact that a defendant's appeal to the circuit court is merely a continuation of the general sessions case, *Crowley*, [343 S.W.3d at 35], but also by the fact that, when a circuit court dismisses an appeal from the general sessions court, it is not required to issue a mandate to the general sessions court. Rather, as discussed in Sam Gilreath & Bobby R. Aderholt, *Caruthers History of a Lawsuit* § 510, at 583 (8th ed. 1963):

> [I]f the papers [from the general sessions court] are properly filed upon appeal [to the circuit court,] prayed and granted within the two, or ten, days, the jurisdiction of the circuit court attaches, and a *procedendo* is not necessary on dismissing the appeal; the judgment of dismissal has the force and effect of a *procedendo*. On production of a certified copy of the judgment of dismissal, or other satisfactory evidence, the justice or general sessions judge would be authorized to reinstate the case on his docket and issue execution without an order from the court. The appellee may prefer to have his judgment in the circuit court, and, upon his motion, the court would dismiss the appeal and affirm the judgment of the justice or general sessions court.

*Cantrell v. Tolley,* No. W2010-02019-COA-R3-CV, 2011 WL 3556988, at *5-6 (Tenn. Ct. App. Aug. 11, 2011) ("[I]f the circuit court . . . had merely dismissed the appeal, without specific affirmance, this would have resulted, under the authority outlined above, in an automatic mandate, or *procedendo*, to the general sessions court, thus shifting jurisdiction back to the lower court.").

In the case at bar, the circuit court in its January 2017 order, having found that it did not have subject matter jurisdiction, dismissed Mr. Cadmus's appeal of the August 2016 general sessions court judgment and also expressly remanded to the general sessions court for distribution of the bond to execute the judgment. When Plaintiffs filed their "Motion to Recover on Bond and Execution," three months after entry of the circuit court's January 2017 final judgment dismissing the appeal, Plaintiffs were seeking execution of the judgment, which at that point had been remanded to the general sessions court's subject matter jurisdiction. *See id.* Therefore, the general sessions court's subsequent ruling on Plaintiffs' motion to recover was an enforcement of its prior judgment, not a modification of its judgment as Mr. Cadmus asserts on appeal. *See generally First Am. Trust Co. v. Franklin-Murray Dev. Co.,* 59 S.W.3d 135, 141 n.8 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. Oct. 8, 2001) ("[P]erfecting an appeal does not prevent the trial court from acting with regard to ancillary matters relating to the

18

enforcement or collection of its judgment."). Because Mr. Cadmus did not file a timely appeal to this Court of the January 2017 judgment, this Court does not have subject matter jurisdiction to review the circuit court's dismissal of Mr. Cadmus's appeal of the general sessions court's August 2016 judgment.

## VI. Appeal of Disbursal Order and Denial of Motion for New Trial

Mr. Cadmus also essentially contends that the circuit court erred by dismissing his appeal of the Disbursal Order without granting his request for a new trial. Plaintiffs contend that the circuit court properly denied Mr. Cadmus's motion for a new trial, asserting that because Mr. Cadmus was in actuality seeking to re-litigate the original judgment, "there was no issue left to litigate which would or could have awarded [Mr. Cadmus] the relief he sought, *i.e.* a new trial of the unlawful detainer action." Upon careful review, we agree with Plaintiffs on this point.

Following entry of the Disbursal Order, Mr. Cadmus perfected a timely appeal to circuit court. *See* Tenn. Code Ann. §§ 27-5-108; 29-18-128. The circuit court then conducted a hearing on Mr. Cadmus's appeal on June 12, 2017. We note that although Mr. Cadmus was still requesting review of the August 2016 judgment at the time of the hearing, the only appeal that was properly before the circuit court at that point was the appeal of the Disbursal Order. In ultimately dismissing the appeal, the circuit court stated in its June 23, 2017 order:

> This cause came to be heard on the 12th day of June, 2017 upon the Motion to Dismiss Appeal filed by [Plaintiffs] and after oral arguments and upon the Court's inquiry of [Mr.] Cadmus'[s] position regarding the General Sessions Court's Order to Disburse Funds entered May 4, 2017 from which [Mr.] Cadmus appealed, the Court finds to-wit: 1) [Mr.] Cadmus insists the General Sessions Court judgment of August 11, 2016, herein after referred to as "the Judgment," is in error; 2) the appeal by [Mr.] Cadmus of the Judgment was dismissed by this Court for lack of subject matter jurisdiction through its final Order of Dismissal entered on January 19, 2017; 3) this cause was remanded to the General Sessions Court for enforcement of the Judgment; 4) [Mr.] Cadmus acknowledges, upon inquiry by the Court, that the mathematical calculations found within the General Sessions Order to Disburse Funds are accurate; 5) [u]pon the reading of Paragraph 1.a. by this Court of said Order to [Mr.] Cadmus and upon [Mr.] Cadmus'[s] responses to the Court's inquiry regarding said provision, [Mr.] Cadmus acknowledges the judgment against him and for [Plaintiffs] is Seven Thousand Six Hundred Ninety and 41/100 Dollars ($7690.41) less set-off of Three Thousand Dollars ($3,000.00), with the

correct principal judgment balance of Four Thousand Six Hundred Ninety and 41/100 Dollars ($4690.41) as set forth therein; 6) [u]pon the reading of Paragraph 1.b. by this Court of said Order to [Mr.] Cadmus and [Mr.] Cadmus'[s] responses to the Court's inquiry regarding said provision, [Mr.] Cadmus acknowledges post judgment interest of six percent (6%) applies to the judgment balance and that the calculations contained in Paragraph 1.b. are correct; 7) [u]pon the reading of Paragraph 1.c. by this Court of said Order to [Mr.] Cadmus and [Mr.] Cadmus'[s] responses to the Court's inquiry regarding said provision, [Mr.] Cadmus acknowledges that monthly rental payment of One Thousand Dollars ($1,000.00) was due [Plaintiffs] and that the calculations contained in Paragraph 1.c. are correct.

THEREFORE upon the above stated findings and the record as a whole, said Motion to Dismiss is well taken and the appeal filed by [Mr. Cadmus] is dismissed in its entirety.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Appeal of the General Sessions Order to Disburse Funds entered on May 4, 2017 is hereby dismissed for failure to state a claim upon which relief can be granted and this cause is remanded to the General Sessions Court. [Mr.] Cadmus is taxed with the cost of this cause for which execution may issue.

Upon Mr. Cadmus's subsequent motion to set aside or vacate and motion for new trial, the circuit court conducted another hearing and entered its October 2017 order dismissing Mr. Cadmus's motions and again remanding to the general sessions court for enforcement of the judgment. Mr. Cadmus then filed his notice of appeal to this Court timely to the circuit court's October 2017 dismissal of his appeal of the Disbursal Order. *See* Tenn. R. App. P. 4.

We emphasize, as explained above, that at the time of the Disbursal Order's entry, the general sessions court had subject matter jurisdiction to enforce its own prior judgment. *See Crowley v. Thomas*, 343 S.W.3d at 34-35; *Cantrell*, 2011 WL 3556988, at *5-6. If the hearing underlying the Disbursal Order had been an evidentiary one, Mr. Cadmus would be correct in asserting that upon appeal of the order to circuit court, he would be entitled to a new evidentiary hearing as part of a *de novo* review. *See US Bank Nat'l Assoc. v. Brooks*, No. M2016-00689-COA-R3-CV, 2016 WL 6581344, at *5 (Tenn. Ct. App. Nov. 4, 2016) (reversing the circuit court's dismissal of an appeal from the general sessions court's judgment of possession in favor of the plaintiff in a detainer warrant action upon determining that the circuit court had not met "its obligation to hold a de novo hearing on the underlying actions"). However, as the circuit court noted in its

20

October 2017 order dismissing Mr. Cadmus's post-judgment motions and the appeal, no evidence was presented in either the general sessions court or the circuit court to prove or disprove any claim as to the Disbursal Order because the order simply set forth the manner of disbursing the appeal bond funds to execute the August 2016 judgment.

Mr. Cadmus insists that in its hearing on Plaintiffs' motion to recover, the general sessions court had exceeded its authority by considering Ms. George's affidavit over Mr. Cadmus's objection. He similarly insists that the circuit court erred by accepting the money amounts set forth by Ms. George. In her affidavit, Ms. George addressed the amount of the original judgment, the amount of set-off that should be credited to Mr. Cadmus, the amount of post-judgment rent due for Mr. Cadmus's post-judgment occupancy of the Property, the statutory post-judgment interest due on the balance of the judgment, and the amount of the filing fee for commencement of the suit. As reflected in the circuit court's June 2017 order, the circuit court questioned Mr. Cadmus concerning whether he disputed what the amount of the original judgment had been, the amount of rent that would be due for his continued occupancy, and whether he disputed the mathematical calculations in the Disbursal Order. We note that such questioning was by way of seeking Mr. Cadmus's position as a *pro se* litigant and not in the nature of testimony. *See US Bank Nat'l Ass'n*, 2016 WL 6581344, at \*5 ("This Court has repeatedly held . . . that statements made in open court are not evidence unless given by a witness who has taken an oath or affirmation before testifying."). The circuit court's order indicates that the court diligently attempted to discern what relief could possibly be granted to Mr. Cadmus upon his appeal of the Disbursal Order executing the original judgment.

In particular, Mr. Cadmus insists that because Plaintiffs purportedly did not acknowledge that he had paid $3,000.00 in rent not accounted for in the judgment until the filing of this affidavit, Plaintiffs committed fraud upon the general sessions court in their initiation of the unlawful detainer action. The circuit court found that in making this allegation, among others, Mr. Cadmus was attempting to re-litigate the unlawful detainer action. We agree. Although Mr. Cadmus questions the circuit court's findings that he acknowledged during the appeal hearing the amounts in the Disbursal Order, his issue is clearly with the general sessions court's original judgment rather than with the mathematical calculations in the Disbursal Order.

Mr. Cadmus has not provided a transcript of the general sessions court's May 2017 hearing that resulted in entry of the Disbursal Order, and he likewise has not provided a transcript of the circuit court's June 2017 hearing concerning Mr. Cadmus's appeal of the Disbursal Order. Mr. Cadmus has also provided no citations to the record to support his assertions that the general sessions court and the circuit heard new evidence from the Plaintiffs. He has also provided no transcript or citations to the record

to support his assertion that the circuit court misconstrued his responses during oral argument concerning the appeal. This Court has held that "the burden is . . . on the appellant to provide the Court with a transcript of the evidence or a statement of the evidence . . . ." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377-78, *perm. app. denied* (Tenn. Sept. 17, 2017) (Tenn. Ct. App. 2007).[6]

Upon our review of the entire record, including the circuit court's order dismissing the appeal, we determine that the circuit court carefully reviewed the Disbursal Order during the hearing to determine that the order was an enforcement of the general sessions court's judgment and that the issues raised by Mr. Cadmus on appeal did not concern any mathematical error in the calculations for disbursement. The circuit court could have entered a new disbursal order executing the general sessions court's prior judgment, but this would have been a mirror of the existing Disbursal Order. As this Court explained in *Cantrell*:

> [A]n appellee may have his or her judgment in the circuit court. In that case, the circuit court's order should not only dismiss the appeal, but it should also affirm the judgment of the general sessions court. Caruthers, § 510, at 583. This distinction is subtle—if the circuit court's order merely dismisses the appeal and assesses costs, then the order constitutes an affirmance of the general sessions court's order in the sense that the order of dismissal functions as either a reviver of the general sessions order (under *Crowley*) or as an automatic *procedendo* for execution in the general sessions court (*Caruthers*). The result is the same—the general sessions judgment is affirmed (thus satisfying the mandates of Tennessee Code Annotated Section 27-5-107 . . .), but jurisdiction would return to the general sessions court upon dismissal of the appeal. *Raht v. So. Ry. Co.*, 387 S.W.2d [781,] 787 [(Tenn. 1965)]. However, if the circuit court specifically affirms the judgment of the general sessions court . . . then the judgment of the general sessions court becomes the judgment of the circuit court. In such a case, jurisdiction remains with the circuit court to execute its judgment.

*Cantrell*, 2011 WL 3556988, at *6.

In the instant action, instead of the circuit court's issuing its own order of disbursal upon its finding that it could provide no relief to Mr. Cadmus through further *de novo*

---

[6] Following the commencement of the instant appeal, Mr. Cadmus filed with the trial court a "Statement of Proceedings," which, upon Plaintiffs' motion and a hearing, was subsequently stricken by the circuit court as containing "improper argument and reference to matters that were not the subject of testimony, stipulations or exhibits introduced or considered by this court . . . ."

review, the circuit court acted within its discretion to dismiss the appeal and remand to the general sessions court for enforcement of the original judgment through the Disbursal Order. *See id.* We determine that the circuit court did not err in dismissing Mr. Cadmus's appeal of the general sessions court's Disbursal Order.

## VII. Remaining Issues

Mr. Cadmus's remaining issues involve either the original general sessions court judgment or his additional relief requested on appeal. Having determined that this Court has subject matter jurisdiction solely over the circuit court's dismissal of the appeal of the Disbursal Order and having determined that Mr. Cadmus cannot prevail on the instant appeal, we further determine Mr. Cadmus's remaining issues to be pretermitted as moot.

## VIII. Conclusion

For the foregoing reasons, we affirm the circuit court's judgment dismissing Mr. Cadmus's appeal of the general sessions court's Disbursal Order. This case is remanded to the circuit court, pursuant to applicable law, for further proceedings consistent with this opinion, including collection of costs assessed below and remand to the general sessions court, as necessary, for enforcement of the judgment in favor of Plaintiffs. The costs on appeal are assessed against the appellant, Richard Cadmus d/b/a Band-Type Supply.

_____
THOMAS R. FRIERSON, II, JUDGE

23